Good morning, ladies and gentlemen. We'll proceed with the arguments in the order listed. Divide your time as you like, and you need not ask for leave. Just manage your own time. When it turns red and you see more numbers, that means it's counting how much over you are rather than how much time you have left. United States v. Burdeau is first. Counsel? Good morning. May it please the Court, Katherine Davis for Appellant Herbert Louis Burdeau. This appeal presents two issues. The first issue is whether Burdeau received constitutionally inadequate assistance of counsel when his attorney, Mr. Donovan, advised him that he could rely on the defense of voluntary intoxication if he were to withdraw his guilty plea and proceed to trial. Burdeau submits that this advice was objectively unreasonable for several reasons. So let me tell you what was going on in my mind. This is just me, because we don't confer before we come in. But I want you to be able to address what's on my mind. Thank you. I looked at the briefs, and I thought, wow, I don't know how the judge avoided an evidentiary hearing here. Burdeau says that the lawyer told me I had nothing to lose. It's ten years either way. Might as well go to trial. But then I look at the letters, and, gee, and I look at the affidavits, and Burdeau and his mother never really say what the lawyer said. They more say what they understood and felt as a result of what the lawyer said. The lawyer says I didn't say that. And then I read his letters, and it wouldn't even matter what he said. He says, alibi won't work because you say you can't even remember where you were. Soddy won't work, some other dude did it, because you've got two eyewitnesses who are solid as a rock. And then he says in the letter, voluntary intoxication won't work because juries never buy it. But it's the only thing we've got, so I'll give it a shot if you want. But don't do it. You're looking at 20 years if we go to trial and ten if you plead out. So I see why the judge denied an evidentiary hearing. It looks like no matter what the lawyer said, and there really isn't exact conflict, Burdeau should have known, except he'd skated on all his priors, that he was looking at 20. How do you get around that? Well, you've raised several issues. I've laid out my feeling about the case. You've raised about ten issues, actually. I wanted to know where I was coming from. All right. I'll try to address them in turn. First, I think it's important to realize that the decision of whether to withdraw from the plea agreement, I think, has to be viewed as a decision separate and distinct from the decision to enter the plea agreement. I mean, we have to understand that all the admonitions and advice that was given in connection with entering the plea was done so months before the September 24th hallway conference. Three months had lapsed. But doesn't our case law say that if you are properly advised, even if it's clear back at your arraignment on the indictment as to what the maximum penalty is, that even if your lawyer later gives you erroneous advice on what you are likely to receive, that's good enough. You were advised at some point during the process of what you were facing, and that is not an effective assistance of counsel. Well, two points. I think that those cases deal with a formal withdrawal of a guilty plea, and that wasn't the case here. We're trying to understand whether effective assistance was given during the 15-minute hallway conference, not whether he was necessarily apprised. But isn't the claim at heart, I really thought I was going to get less time than what the judge actually gave me? In this case, don't our cases address just that situation? Well, I think that in this case, the circumstances have to be understood from the perspective of Mr. Berdeau. And again, three months had passed since the last admonition was given. He's pulled out for a 15-minute hallway conference. Most of the admonitions that were given earlier were not then again given on September 24th. I think that Judge Kleinfeld's observation that in most situations an evidentiary at the very least is required is what the Court should focus on here. He says he and his mother both put in evidence of their story that the lawyer said it's going to be 10 years either way. Isn't that what they say? That's what they say, correct. Not exactly, though. They say they understood that he was saying it's 10 years either way. Correct. I think I understand Judge Kleinfeld's concern. This is a little bit their impression of this and that. But my concern here, leading me to think that perhaps an evidentiary hearing is warranted, is that I could see a lawyer saying in this precise context, it's 20 years if you're convicted, it's zero if you get off. Or thinking that, and then thinking it's like 10 years either way, like there's a 10-year swing, whether you win or lose. If you take the plea, you're 10 years, right? He had a plea at 10 years? He did. If he went to trial and was convicted, he gets 20 years. If he goes to trial and he wins, he gets zero years. So, I mean, a lawyer might think it's 10 years either way, or say something like that, thinking it's a 10-year swing either way, depending on whether you win or lose. And the client hears it like, you're going to get 10 years either way, whether you win or lose. That's pretty speculative. But I don't really think we should be speculating. I don't understand why the judge didn't give him a hearing and take testimony. There was also another witness there who declined to give an affidavit, right? Well, he did give an affidavit, but it was not signed. Apparently, there was some problem with that. There was some evidence that could have been laid out, and the judge could have made precise findings with a hearing of, like, a half-hour. There was a great deal of evidence. Absolutely. And I think it's also important to recognize that unless – if factual disputes exist on matters that take place outside the record, the Court under 2255 has to give an evidentiary hearing unless the allegations taken as true don't state a claim and the government concedes that if the allegations are true that Verdot has stated a claim, or unless he can find that the allegations or testimony are palpably incredible or impossible to believe. Why aren't they palpably incredible in light of the letters? The Court didn't even find that they were palpably incredible. The Court found that it was highly unlikely that because of the rushed nature of the hallway conference, because of Verdot's lack of training in the law, that it was most likely or almost certain that they misunderstood what Donovan had said. But the Court never found that. It was impossible to believe Verdot's account of events. And I think – I thought that's what he was saying. He was just being more polite about it so as not to call Verdot's mother a liar. He may have been, but I – That's the way it read to me. I think that the case law requires that it's impossible to believe. And, again, it has – these allegations have to be viewed against the record then existing. Donovan's affidavits and all the letters attached thereto do not constitute part of the record. They create only a question of fact. Cases where courts have found that the allegations were impossible to believe – Not part of the record? I thought they were the record. They're the – The existing record, meaning if the petitioner makes a statement in an affidavit or makes an allegation in connection with a motion to vacate, and the judge looks back to the existing record and says, hey, look, you know, at your Rule 11 hearing you said this. You're incredible. It's impossible to believe that you're actually telling the truth now. There's an internal inconsistency within the existing record that would question the credibility. You still haven't addressed the concern that I posed earlier, and that is, with all due respect, so what? Even if he and his mother were completely misinformed by the lawyer as to what the sentence was, our case law says that if he was told by the judge at the time that he entered the plea or at the time that he had his initial appearance what the maximum punishment was, then it doesn't matter. It's not a basis to grant habeas relief if his lawyer gave him bad advice. Well, I think that there would be two responses to that. Number one, I would, again, argue that this decision – this would be a unique situation. There was no reason for Brideau – Why speak about a lawyer underestimating what the Court's going to do with sentences? Because he had given an accurate assessment for seven months before this 15-minute hallway conference. There was no reason to ask Brideau if he wanted to withdraw the plea. The judge didn't ask him if he wanted to withdraw. He had accepted the conditional plea agreement. He gets pulled out into the hallway and asked, hey, do you want to withdraw this? Most of the admonitions that weren't previously given were not given here. And to the contrary, he was told that he could rely on an intoxication defense. This would – But there is no requirement that we give him – there's nothing in Rule 11 that says if a defendant wants to withdraw a plea, you have to go through the same kind of a colloquy that you do when you take the plea. Okay. Even assuming that that – that I still would maintain that at least an evidentiary hearing was required. And the intoxication defense argument would still be a viable argument. He did not – he – Even where the state of the law in the Ninth Circuit was not settled as to whether – Absolutely. – it was a specific or a general intent crime? I think that's precisely the reason of – I think that renders even more unreasonable Donovan's advice. I think that at the time – Because he guessed wrong, the Ninth Circuit went the other way? I do – I do think so. I think – Because if we held every lawyer ineffective for guessing which way the Ninth Circuit was going to go before we ruled, we'd have an awful lot more of these cases. I'm not sure it was a matter of guessing. I think that it was clear that at the time not a single court in the Ninth Circuit had recognized 2111 to be a specific intent crime. To the contrary, the Court had recognized 2113a, an analogous statute, to be a general intent crime. The district court just 37 days after the hallway conference completely said that there were many reasons – many reasons to find that 2111 is not a specific intent crime. When I look at the judge's ruling, page 91 of the excerpts, he says that because Donovan repeatedly advised Verdot before he pleaded guilty that he could expect 17 to 20 if he was convicted on both counts. The judge says, it is therefore highly unlikely that Donovan actually made the statements attributed to him. It is almost certain that Verdot and his mother simply misunderstood. Why shouldn't I read that as a finding of fact based on the documentary evidence that it – that Verdot and his mother misunderstood and that Donovan did not make the statement they claimed? Well, I think that – well, two reasons. I think, first, if the case law calls for a finding of palpable incredibility or impossibility to believe when viewed against the record, then the court should have made that finding. It didn't make it. Well, one way to look at it is that there was an evidentiary hearing on the record as opposed to live testimony because the judge had affidavits and documentary evidence, and that this is a finding. And the standard of proof that the judge used was mere certainty as opposed to mere preponderance. I suppose – I don't think that that's an entirely unreasonable construction. I think that the judge was – the court was required to make a finding that viewed against the then-existing record, Verdot was incredible. Not that he – not that it was improbable that his claims were correct or right, but that there was some internal inconsistency within the then-existing record. Donovan's affidavits just create a disputed issue of fact. I don't think that the court was entitled to weigh the evidence and summarily credit one affidavit over another without having live witnesses. Well, a lawyer could have given good advice consistently over a period of time and then could have misspoken in an informal hallway conference. So I guess that's why I'm inclined to think the judge should have given a hearing here. We don't know what the lawyer said in that conference. I think that that's right. And I think, again, it may be true that it's a very – a highly unlikely or improbable claim. Donovan seemed to be giving very good advice up until that moment. But I think that the law requires that there should be an evidentiary hearing unless – Of course, we do have a declaration from Donovan as to what he said. Right. Correct. Right. Yes. So it's not quite accurate to say we don't have any idea what the lawyer said. We know from his affidavit what he said. We know from the affidavits of the mother and Berdeau what they thought they heard. Well, we – well, that's – I think that that would be characterizing one as being the truth and one as being a perception. We know what Donovan says he said and we know what Berdeau says he thought Donovan said. But I guess – Not exactly. But Donovan doesn't say in his affidavit that that's everything he said. That's correct. And I would – He said what he advised him and he's remembering what he advised him and he's laying it out. And Berdeau – He's not disclaiming – like, if there were a hearing and someone could cross-examine him, that isn't necessarily the whole truth, what he says in his affidavit. I think – I think that's absolutely right. And I think that we can – there are things that can be inferred from what he didn't say. For example, he didn't admonish him not to withdraw his plea. I mean, he has a due – What Berdeau and his mother say is – is not that Donovan said anything different from what he said. They're very carefully worded and undoubtedly they were prepared with the aid of counsel. So the care is professional care. And they don't say what he said. They said, I understood him to be saying. In retrospect, I now realize that what Donovan may have actually said is – is – and then he describes that he – that he thought he may have said something different from what he then understood he said. And then he says, although I am uncertain as to exactly what Donovan said, but I'm thinking the judge can treat this as the evidence for an evidentiary hearing. And what he's got is evidence from which he can make a finding of fact to a high level of certainty. And he did. Because these people were so careful not to say that Donovan said anything different. And he did. And he did. Well, I would argue – again, I would just – I would argue again that unless there's a credibility – that unless there's a credibility determination made based on the existing record, the district court's not entitled to weigh the evidence without a hearing. If he said he was conducting additional discovery and using this as a basis to weigh the evidence and make a conclusion, maybe that would be a different case. But he denied – he denied the hearing on the basis that he could make a conclusive credibility. Do you know – is there Ninth Circuit law on whether a judge can have an evidentiary hearing without live witnesses, whether he can have an evidentiary hearing on the papers? I think that there may be. I don't know the scope of the rule. I could certainly submit some supplemental authorities. But I do believe that there is some provision. It strikes me that it isn't much different from deciding a case on summary judgment where you've got, you know, verified declarations and authenticated exhibits and the court looks at the papers. And I think the point that Judge Kleinfeld was getting at, which is kind of where I'm coming from, is if the issues are not joined, if the mother and the father client don't dispute what the lawyer said, why can't the district court, just like deciding a motion for summary judgment, declare there is not a disputed issue of material fact here and credit the unrebutted statement by the lawyer that what he said to them was consistent with the written letters that were also part of the referral? I could respond in two ways. One, I'm not the – it's not undisputed. I mean, the district court did find there was no real dispute here, and I think that's a fundamentally flawed assumption or conclusion. There was a real dispute here. Verdot and his mother say that they had reason to believe, they understood Donovan to be saying, they were led to believe that there was no risk in withdrawing the plea and that it would be 10 years either way. Donovan says he never said that, and on top of that, he did tell them that he would get 17 and a half to 20 if he were to proceed to trial, et cetera. That's a disputed issue of fact. I think that, to the extent Verdot says he was led to believe he would only have 10 years either way, and Donovan says that he admonished him properly about the sentence he would get if he went to trial, I don't see how that's not a disputed issue of fact, and again, unless the credibility determination can be made, not the weighing of the evidence, but the credibility determination can be made, the district court had to have had a hearing to resolve that. I would also point the Court to, I think we cite this in our brief, United States v. Chacon-Palmares. It's a 208 F. 3rd, 1157, a 2000 case. There, the Court said that an evidentiary hearing had to be had when the lawyer had clearly implied that he told the defendant to lie at trial. It's not a factually analogous case, but the point is, based on allegations that the lawyer had implied erroneous advice, the Court said that an evidentiary hearing still had to be had. Chacon's a little different. The lawyer says, I think you'll get three months, and the guy actually got 10 years. Well, I agree. Again, it's not factually analogous, but the idea is that it's not so much what Donovan stated expressly, even if he implied it or, by omission, led Berdow to believe a certain result. I think that that would still be a Sixth Amendment violation. I think it would still require an evidentiary hearing. Relatedly, if I could just comment on Judge Talman's intoxication question, intoxication defense question. The case law is also clear that there is a duty to know the law and a duty to communicate the state of the law. You don't have to know what the answer is going to be, but you have to communicate the state of the law to the client so the client can make an informed decision. But your argument is not that the law was settled. It is that the most analogous was the 2113a. That's not really the case. That may be, you know, that may be an answer, but it was an unsettled area. But it's – I don't think that that really – with all due respect, I don't think that is the argument. I think the argument is there was no case law on point. There was nothing but a sole dissenting opinion from a 21 – from a 20-some-odd-year-old case that misconstrued the majority opinion. The majority opinion in Lilly expressly said, we're not reaching 2111. Is it ineffective assistance to be optimistic when the law is a blank slate? I think it's ineffective assistance not to tell your client when he's facing – looking at a decision to withdraw a guilty plea that could conceivably get him a sentence half that he would get if he went to trial and lost. I think it is ineffective not to say, look, this is a risk. He'd already told them the defense is really a loser. Juries just don't buy it. The only question is, will I get to put on the defense that's a sure loser or not? I think that's a huge difference. I think – Like much of one to me, it seems kind of metaphysical. Do I get to waste my time with a totally ineffectual defense, or does the judge shut me down before I waste my time with a totally ineffectual defense? Again, I don't think that that's an unreasonable construction, but I would argue that whether or not something is a viable defense can allow – that understanding will allow a defendant to make an informed choice. Do I want to take a risk? Do I not want to take a risk? You tell the guy you have no chance, this is as a matter of law, never been recognized in the Ninth Circuit, and I'm relying on a sole dissenting opinion and an unpublished disposition, that's an entirely different calculus. And he was entitled to have that information before he made his choice. And it's undisputed. I need to clarify something from the record. Yes. I'm looking at the preliminary order on the motion to vacate it around page 79. Here's the question. As I understood this, the court made a decision in the preliminary order that this whole intoxication defense issue was out. Yes. The court made a decision in the preliminary order that the issue of an erroneous prediction of the sentence, the idea that the lawyer told me it's ten years either way, that that was out. The judge made a ruling on that. And that the only thing the judge was still considering was whether there was an error in not advising about the 924C conviction risk. And then he ordered the lawyer to serve an affidavit about the advice he gave his client. But in the context, I didn't read what he was ordering the lawyer to do to be to give advice about everything he remembered about the first two issues that were out of the case. So I don't have any confidence that the lawyer's affidavit is even an attempt to describe everything he said about the intoxication defense or the length of the sentence. I think that's, I found the order to be, in all honesty, I found the order to be slightly confused. The court addresses, does make the findings that the court points out, but then goes on in the final order to actually address the intoxication defense, even though it had disposed of the issue in the first. So he addresses it again. My point is that in the first order, when the judge made an order on paragraph 3 on page 80 in the record, telling the lawyer to advise about the advice he gave his client about whether to withdraw the plea. What he was actually responding to. Right. In the context, the judge had already taken two issues out of the case. And it looked like he was just wanting advice about the third thing. Well, again, it is a bit confused. Technically, it was dealing with just the firearms, the 924C claim. But the briefing, if you look at the original motion to vacate and then the second motion and then the response of pleadings, it's clear that the bigger issue in connection with the 924C claim was, did Donovan provide adequate assistance, you know, in terms of properly advising of the risk and consequences of withdrawing from the plea. It was a much broader issue. And the first affidavit, I can go back to the table and get it and read it to the court, but the first affidavit does, Birdo's first affidavit does discuss the intoxication and the 10-year sentence. And so Donovan was responding. I think it's set out actually in the court's, one of the court's orders. But Donovan was responding to both the intoxication claim and the, at page 73 of the record is the operative paragraph from Birdo's initial affidavit. It's starting at line 21. And so Donovan was responding to both issues. We've gone way over time. Thank you very much. Thank you very much. Thank you, counsel. Thank you. Counsel. Good morning, Your Honors. Again, I'm Carl Rosted from the U.S. What's the standard for when the judge on a 2255 motion is supposed to give an evidentiary hearing under statute? What's the standard? When there are material facts in dispute, Your Honor, I think that's the standard. And I think that the observations of Judge Tolman and Judge Kleinfeld are correct in that there really isn't an inconsistency here. If you're talking about what the lawyer said, focusing on his effectiveness and his assistance rather than focusing on what a defendant thinks he believes, wants to believe, you know, if we based the question of ineffective assistance on the state of mind of the defendant, you would see a lot more cases up here because defendants are always unhappy with the amount of time they get. In order to disclose in his affidavit everything he could remember saying about the length of the sentence? I don't believe so, Your Honor. But I don't. The judge didn't even have beforehand the lawyer's best recollection of what the lawyer would construct as to what he said. We know what the lawyer said earlier, and there's a lot of record of that in the lawyer's letters. But if the lawyer just had a bad day and misspoke in the hallway, the judge didn't even order the lawyer to say, tell us what you remember saying to Brideau and his mother and these other witnesses that day, right? Well, except for his affidavit says what he didn't say. And I don't know if that's satisfactory or not. But, I mean, the whole issue was what was said to the defendant based upon the opinion that he thought that he was going to get a 10-year sentence either way. So these three witnesses have been put on, had their testimony and prosecuted within an hour? Oh, certainly, Your Honor, certainly. So, I mean, why should we permit a judge to do what I think maybe my colleagues will think is reasonable? Why should we permit a judge who can give an evidentiary hearing in a half hour to make some type of factual determination based on correspondence that's in the file and other evidence without even asking the lawyer or letting the lawyer be cross examined as to what did he say that day or what did he, does he remember, did he say X or Y? Why should we permit a, have a standard that permits that? Well, Your Honor, I don't know that if that's the case, then you're always going to have to have a hearing in all 2255 cases, I assume. Because if there's no clear, I think this is an extremely clear case where the You're going to have someone raise a fact issue with their affidavit. And that's what I'm saying, Your Honor, is that I don't think the defendant raised a fact, factually disputed issue. He indicates what he understood, but he, but Mr. Donovan denies what any, saying anything like that or giving him any reason to believe that. So you can actually have him believe it and have Mr. Donovan say, not, indicating that he didn't say anything that would lead him to that conclusion. And that is not disputed. I guess the way the client could believe it, even though Donovan did not say it, would be the client had skated for the numerous violations that made him a Category 6 offender. So it would just be hard for him to believe he's looking at 20 years. Well, and he has his mother there to assist him in his version of reality, I think, Your Honor. I think that's what defendants want to believe. What about the other defendants who were there, though? Pardon? There were two alcohol counselors there. Neither of which signed an affidavit. They could certainly testify, Your Honor. Right. Well, one of them. One of them can't. Right. One of them can't. Oh, one of them died or? No, he got all. I'm sorry. I wasn't the lower court. He's a senile. He isn't a competent witness anymore. The other evidently defense counsel presented him with an affidavit and he didn't sign it. Right, Your Honor. So there's no. And we certainly could have had a hearing. I mean, the. One of the reasons why witnesses declined to sign affidavits, it doesn't prove anything. All you know if a witness won't give an affidavit is you don't know what their testimony is, period. That's correct, Your Honor. So we don't know what the neutral witness's testimony would have been. We know what the lawyer's kind of self-serving affidavit, and I don't mean this to be critical of the lawyer, but, you know, he's put on the spot by a claim of ineffective assistance of counsel. We know what his self-serving recollection is of what he thinks he said on that conference. We know what the mother and the defendant think he said. And I would. I just can't understand why the judge shouldn't be required to hold a hearing in that setting. Your Honor, and that certainly I can see. We can have a hearing. We can get Judge Van Sickle to come over from Spokane and get the witnesses. You're right, but I guess I would not agree with the Court that it's a simple 30-minute hearing when, you know, out in Montana, we travel a long ways. It takes us a lot of time to put witnesses together. I'm talking about the Court's time, though. The Court's time. Lawyers always have to travel a long way. Your Honor, I just think that. Tell me something about this hearing. Yes, sir. After I read the letters from Donovan to his client where he so carefully and thoroughly explained why the alibi defense couldn't be put on and why the some-other-did-it defense couldn't be put on and why the too-intoxicated-to-form-a- criminal intent defense was a loser, my reaction was, if I had an evidentiary hearing and Berdeau and his mother said the lawyer had told them this and the lawyer testified that he told them that, I just wouldn't believe anything different from the letters after reading the letters. And what I'm wondering is, do we have any Ninth Circuit law that says whether a judge to do an evidentiary hearing has to actually have the witnesses testify live, or can the judge? I know that in ERISA cases, we have a decision called Kearney that says a judge can try the case, have an actual trial conducted on the written record with no live testimony. And I'm thinking if in an ERISA case he can have a trial where all he does is read the affidavits and the letters from the lawyer to the client. Do we have any Ninth Circuit law on that? Not that I know of, Your Honor. I've never seen the issue in that context. I mean, certainly the law always focuses around where there's a disputed issue of a material fact, the judge has to hold a hearing or have an evidentiary hearing, but I have not seen any case law that discusses what form that hearing has to take, whether it can be a paper hearing or whether it can be a written hearing. It has to be with live testimony. Mr. Russett, can you help me with this citation? Judge Van Sickle, at excerpt of record page 85, which is the second order regarding the motion to vacate, wrote the following. An evidentiary hearing is not required where the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record. And he cites to Shaw v. The United States, 878 F. 2nd, 1156-1159, a Ninth Circuit 1989 decision, and then Judge Van Sickle declares this is such a case. Are you familiar with Shaw? I'm sorry, Judge. I'm not. So we don't know if he made it up? I certainly doubt that he did. So there is a Shaw case and it says that? Certainly. I think that the judge probably, there probably is a case, Your Honor. I certainly would think Judge Van Sickle would not cite it. But from the cases I've seen that are like it, there generally is a view that if it can be determined from the record that's established, there's no need for, if the fact can be determined, then there's no need for an evidentiary hearing. Does that case respond to Judge Kleinfeld's question? It should. As a legal basis for not holding a hearing, I don't know that it does so factually from the standpoint of if the whole question is, is there a dispute or is there not a dispute? In other words, if the defendant and his mother took the stand and the one alcohol counselor who could testify took the stand in light of all of the corroboration of the attorney's affidavit, namely his own letters, one thing I think we've overlooked too is where this hearing took place at the sentencing hearing. They had the pre-sentence report, at least as to the issue of how much time he's going to get. The reason that they had the hallway conference is because Judge Van Sickle was signaling that he wasn't going to accept this plea agreement down to 10 years. Well, clearly he wasn't very happy with the 10-year plea. That reading between the lines is pretty clear to me. So how could a defendant honestly and reasonably believe that he's going to get 10 years either way? It would depend on what the lawyer said to him. I mean, this is like not a highly educated guy and his mother. But again, you know, how subjective does it have to be, Judge? I mean, you could still put him on and they can believe that. I understand if the judge had held a hearing and the lawyer had said what he said and the judge made a finding, I'd have no problem. It looks to me like it probably, there was some mishearing. But that doesn't mean that the lawyer didn't misspeak also. That's what we don't know. And it probably means that the lawyer wasn't even asked. Well, he wasn't examined. He was asked. Right. So we don't know what the lawyer would say if questioned by a skillful defense counsel. No, Your Honor, we don't. But I guess I get back to, well, this is not a case where you have a defense attorney who is unskilled or unexperienced who makes no record of what he's advised his client and then just asks you to take his word for it. This is a defense attorney who took great pains on several letters to give his client black and white indications of what was going on. And I think that that's sufficient to corroborate his affidavit and sufficient to satisfy the fact. Was there any evidence that Burdeaux was, in fact, uneducated or that he would have any difficulty reading and understanding the lawyer's letters? I thought the lawyer's letters were very clear. But if Burdeaux is illiterate, that might not matter. Your Honor, I don't know. Again, I didn't have this case below. He's never argued that he's illiterate. I understand, Your Honor. But I don't see any record or any claim that that's the case. There's no claim. I'm not saying that Burdeaux is illiterate, but what a criminal defendant is going to think is probably going to be influenced a lot by what he hears a lawyer say. I can only assume. Really, what did that lawyer say in the conference? Exactly. If the trial judge doesn't want to hold a hearing, I think he's got authority to not do that if there's no issue of fact. And we just may have a disagreement here whether the affidavits raise an issue of fact. I believe that's the seminal issue, Your Honor. Thank you. And then your fallback position is even if they do, it's immaterial because under Thornton, as long as Burdeaux knew the max, it doesn't matter. There's no prejudice if the lawyer predicted a lower sentence than the max. I agree with that, Your Honor, as well. And again, we have the benefit not only... What do you think of Gray's distinction of Thornton? The Gray brief distinguished Thornton. And I'm unfamiliar with that, Your Honor. Geez. I'm sorry, sir. What do you do on an airplane? I'm sorry, Your Honor. Last night in the hotel room. Well, Your Honor, I make no excuses. I'm sorry. Thank you. Thank you, counsel. No, we went way over. Thank you, counsel. Ms. Davis, on our behalf, I do want to thank you for taking this case on a pro bono basis. The Court very much appreciates it. Thank you for your service. Thanks very much. United States v. Burdeaux is submitted. We'll hear from United States v. Scudino. Thank you.
judges: Kleinfeld, Gould, Tallman